# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

In re:                                                                                              In Proceedings
                                                                                                    Under Chapter 13
DARIN M. TAYLOR and
LISA A. TAYLOR                                                                           No. 07-60500

         Debtors.

## OPINION

This matter is before the Court on the Chapter 13 Trustee's objection to the debtors' claimed exemption of snakes as tools of the trade. The debtors assert entitlement to the exemption because they hope to use the snakes in a contemplated snake breeding business.

The relevant facts are undisputed. On schedule B, the debtors listed fifteen snakes, valued at $6,000.00, as personal property. On schedule C, the debtors claimed the snakes as tools of the trade, with each debtor seeking an exemption of $1,500.00 for the snakes. The debtors admitted that the snakes were too immature to breed as of the bankruptcy petition date, but stated on their schedules that they hoped to earn income in the future from a "potential business" consisting of breeding the snakes and selling their offspring. On the bankruptcy filing date, the debtors were receiving income from employment and Social Security. The snake breeding business was not in operation and was generating no income.

When a debtor files bankruptcy, the Bankruptcy Code allows the debtor to choose between state or federal exemptions "unless a state chooses to 'opt out' of the federal

1

exemption scheme." *In re Chapman*, 223 B.R. 137, 139 (Bankr.N.D.Ill. 1998) (citing 11 U.S.C. §522(b)(1)). Illinois has opted out of the federal exemption scheme. 735 ILCS 5/12-1201. Accordingly, Illinois residents who file for bankruptcy must look to Illinois law to determine property exemptions.

Here, the debtors rely on Illinois' personal property exemption statute, 735 ILCS 5/12-1001(d), allowing an exemption for a debtor's tools of trade. To determine whether snakes are exempt as tools of the trade under this statute, the Court first looks to the statutory language. *See Duncan v. Walker*, 533 U.S. 167, 172 (2001) ("We begin, as always, with the language of the statute.") The pertinent portion of the exemption statute reads:

> The following personal property, owned by the debtor, is exempt from judgment, attachment, or distress for rent:
> . . .
>
> (d) The debtor's equity interest, not to exceed $1,500 in value, in any implements, professional books, or tools of the trade of the debtor . . . .

735 ILCS 5/12-1001(d).

"Neither Illinois law, nor the Illinois legislature, has defined 'tools of the trade,'" *In re Zais*, 202 B.R. 263, 264 (Bankr.N.D.Ill. 1996), and the Court has found the limited Illinois case law on the issue to be of little help. The *Zais* court recognized that "Illinois' tools of the trade exemption closely resembles that of the federal exemption contained in § 522(d)(6) of the Bankruptcy Code. Thus, references to authority provided by the Seventh Circuit would be appropriate." *Id*. at 265.[1]

---

[1] 11 U.S.C. § 522(d)(6) (2006) provides in relevant part:

> (d) The following property may be exempted under subsection (b)(2) of this section:
> . . . .

2

In the case of *In re Patterson*, 825 F.2d 1140 (7th Cir. 1987), the Court of Appeals for the Seventh Circuit examined whether livestock may be considered a tool of the trade. In *Patterson*, the Wisconsin debtors sought to avoid liens in dairy cattle and farm machinery. *Id*. Wisconsin allows debtors the choice of federal or state exemptions and the debtors claimed their cattle as exempt under 11 U.S.C. § 522(d)(6), the federal exemption. *Id*. at 1147. The debtors argued that the cows they sought to exempt were "instrumentalities for turning raw materials (grass, hay, water, etc.) into salable products (milk, cheese, etc.) and therefore are tools of the farming trade in a broad sense." *Id*. at 1146.

The court rejected the debtors' argument, finding that "[t]he purpose of the tools of the trade exemption is to enable an artisan to retain tools of modest value so that he is not forced out of his trade." *Id*. The court stated that "[t]o regard cows and other livestock as 'tools' or 'implements' does particular violence to the English language" and reasoned that if Congress had intended to allow livestock to be subject to a tools of the trade exemption, the exempt amount allowed would not be so small, "for what, to repeat, could be the purpose of allowing a farmer to exempt a tiny fraction of the value of a piece of heavy farm machinery or of a herd of cattle?" *Id*. The court further explained, "[i]f "tools" is to be given so capacious a definition as the Pattersons urge, then the exemption is not for the tools of a person's trade but for the capital assets of his business, even though it is to those assets that creditors primarily look for repayment of the bankrupt's debts." *Id*. The court ended its discussion by concluding that "[t]he relevant tools of the

---

(6) The debtor's aggregate interest, not to exceed $2,025 in value, in any implements, professional books, or tools of the trade of the debtor or the trade of a dependent of the debtor.

3

trade are the rakes and other hand tools that [the debtor] continues to own, and to use as a dairy hand following the bankruptcy." *Id*.

Given that the protected categories -- "implements, professional books, or tools of the trade" -- are identical in the federal and Illinois exemption statutes, the Court finds the *Patterson* decision conclusive. Like the cows in *Patterson*, the snakes here will be the capital assets of the debtors' contemplated business. In *Patterson*, the limited amount of the federal tools of the trade exemption was found to support the conclusion that capital assets such as livestock are not intended by the drafters to be exempt as tools of the trade. *Id*. at 1147. At the time *Patterson* was decided, the amount of the federal exemption was $750.00. Similarly, the Illinois tools of the trade exemption is the relatively modest amount of $1,500.00.[2] Had the legislature intended debtors to be able to exempt capital assets such as livestock from the bankruptcy estate, a higher dollar value would have been allowed. As the *Patterson* court asked, what would be the purpose of allowing the debtor to exempt a tiny piece of an asset? *Id*. at 1146. The fact that the debtors in the instant case are attempting to exempt a relatively high proportion of the value of the snakes -- half of their $6000 value -- does not detract from this conclusion. This outcome results because the debtors in this particular case own only a small number of snakes. Were the number of snakes to increase, the ratio of the snakes' value to the exempt amount would increase significantly.[3]

Moreover, the absence of a specific animal exemption in Illinois speaks to the legislature's intent. The statute in question provides an exemption for "any implements,

---

[2] The Court notes that even this relatively small amount, effective January 1, 2006, doubles the previous exemption amount.

[3] The ratio would also increase were the case brought by a single debtor entitled to only a $1,500.00 tool of the trade exemption.

professional books, or tools of the trade of the debtor…" 735 ILCS 5/12-1001(d).  The grouping of implements, books, and tools suggests that the legislature sought to exempt small objects that a debtor relies upon in his work.  It is contrary to the ordinary understanding of these terms to suggest that they encompass living animals.  Had the legislature intended to exempt animals under the personal property statute, they could have explicitly done so, as other states have done.  *See*, *e.g.,* KS ST § 60-2304 (Kansas statute exempting breeding stock); C.R.S.A. § 13-54-102 (Colorado statute exempting all livestock); 12 V.S.A. § 2740 (Vermont statute exempting various livestock); N.H. Rev. State. Ann. § 511:2 (New Hampshire statute exempting pigs, cows, sheep, oxen and horses); Minn. Stat. § 550.37 (Minnesota statute exempting farmers' livestock); N.D. Cent. Code § 28-22-04 (North Dakota statute exempting livestock and farm implements).  Instead, the Illinois legislature chose not to allow an exemption for animals.  The Court may not substitute its judgment for that of the Illinois legislature by construing the language of the personal property exemption statute so broadly as to create such an exemption.[4]

As authority for their position, the debtors submit a long list of cases.  However, all are distinguishable.  The cases the debtors rely on either examine other states' exemption statutes, which differ from Illinois law, or discuss the status of vehicles as tools of the trade.  None of the cases present an analogous situation and, therefore, are not instructive.  The debtors specifically cite to several cases decided by bankruptcy courts within the Seventh Circuit that have distinguished *Patterson*. *In re Hively*, 358 B.R. 752 (Bankr.C.D.Ill. 2007); *In re Stallsworth*, 133 B.R. 470 (Bankr.S.D.Ind. 1991); *In re*

---

[4] The statutory language is the best indicator of legislative intent and a statute must be given its plain and ordinary meaning.  *People ex rel. LeGout v. Decker*, 146 Ill.2d 389, 394 (1992).

5

*Thompson*, 82 B.R. 985 (Bankr.W.D.Wis. 1988). But, as debtors admit, these cases distinguish *Patterson's* holding "regarding the issue of vehicles." They do not analyze its holding with respect to the treatment of livestock as tools of the trade. Therefore, these cases too are not persuasive.

Despite a dearth of supporting case law, the debtors raise a three-part argument for why they should prevail. First, the debtors argue that for the tools of the trade exemption to apply to their "trade" of snake breeding at all, it must apply to the snakes because they are the only "tools" needed. The Court doubts that snakes are the only tools involved in a snake farming operation. Common sense dictates that various types of equipment (e.g., terrariums, heating lamps, feeding and watering devices) are necessary paraphernalia to such an operation. Furthermore, these items fall within the more traditional definition of tools as understood by the *Patterson* court. Even assuming, *arguendo*, that snakes are the sole item needed to operate a snake breeding business, this fact does not qualify them to be tools of the trade in the absence of statutory authority affecting such a result.

The debtors' second argument is that the exemption is necessary to the continuation of their business. The debtors cite *In re Hively*, 358 B.R. 752, in support of their argument. In *Hively*, the court allowed the debtor to claim a trailer used for hauling a food grill as an exempt tool of the trade. *Id*. at 753. The court recognized the narrow interpretation given the federal tools of the trade exemption by the Seventh Circuit in *In re Patterson*, which was subsequently adopted by bankruptcy courts sitting in Illinois for interpreting Illinois' tools of the trade exemption. Nevertheless, the *Hively* court allowed the exemption because "[a]llowing the Debtors to exempt the trailer furthers the purpose

6

of the exemption in that it will permit the Debtors to continue in business despite their bankruptcy." *In re Hively*, 358 B.R. at 753-54. The Court finds the rationale of *Hively* inapplicable because the instant debtors admit that there was no snake breeding business in operation on the petition date,[5] and, in fact, such a business remains inoperative post-petition. The purpose underlying *Hively* – of permitting the exemption because to do so would allow the debtors to "continue in business despite their bankruptcy"— is non-existent here.

Finally, the debtors argue that disallowing the exemption could result in a plan payment in excess of their ability to pay, resulting in conversion to chapter 7 or dismissal of their case. The debtors do not explain this argument. The Court can only assume that the debtors' contention is that increasing the amount of non-exempt property will result in a higher payment in order to satisfy the "best interests of creditors test." 11 U.S.C. § 1325(a)(4).[6] However, equitable considerations, including a debtor's ability to afford the plan payment, are not factors that the Court may consider in determining whether an exemption is allowable or not. The inquiry into whether a debtor's personal property has met the definition of a tool of the trade is purely a matter of statutory construction. The Court is mindful that "[e]xemption statutes must be liberally construed in favor of the debtor. . . . Where it is possible to interpret an exemption statute either favorably or unfavorably with respect to the debtor, the favorable method should be selected." *In re Laredo*, 334 B.R. 401, 409-10 (Bankr.N.D.Ill. 2005). However, given the Seventh Circuit's narrow interpretation of the tools of the trade exemption, *see, e.g., In re*

---

[5] "The Code and case law make it clear that a debtor's exemption rights are determined as of the date of filing of the petition." *In re Garstecki*, 364 B.R. 95, 100 (Bankr.D.Kan. 2006).

[6] If, instead, the debtors' point is that they need the income from their snake business to afford the plan payments, the Court is not persuaded. As previously noted, the debtors report no income on their Schedule I from the fifteen snakes they seek to claim as exempt property.

*Gentry*, 297 B.R. 553, 554 (Bankr.C.D.Ill. 2003), Illinois' tools of the trade exemption does not support the debtors' desired result.

For the reasons stated, the Court finds that the debtors' snakes are not exempt under 735 ILCS 5/12-1001(d) as tools of the debtors' trade. Therefore, the Trustee's objection to the exemption is sustained and the exemption is disallowed.

See Order entered this date.


ENTERED: April 18, 2008                                /s/ Kenneth J. Meyers
                                                       UNITED STATES BANKRUPTCY JUDGE